**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HIBERNIAN DEVELOPMENT, LLC, an Illinois Limited Liability Company, | |
| Plaintiff, | Case No. _____ |
| v. | |
| HARTZ CONSTRUCTION, CO., INC., an Illinois Corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT**

Plaintiff, HIBERNIAN DEVELOPMENT, LLC ("HD" or "Plaintiff"), an Illinois Limited Liability Company, by its attorneys, Niro Law Group, LLC, for its Complaint against Defendant, HARTZ CONSTRUCTION CO., INC. ("Hartz" or "Defendant"), an Illinois Corporation, states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**Nature of this Action**

1.     This is an action for (1) violation of the Lanham Act (Trademark Infringement) as provided for by 15 U.S.C. § 1125(a); (2) violation of the Lanham Act (False designation of Origin) as provided for by 15 U.S.C. § 1125(a); and (3) violation of the Illinois Uniform Deceptive Practices act as provided by 815 ILCS § 510/2 *et seq*.

**The Parties**

2.     HD is a limited liability corporation organized under the laws of Illinois.  HD has its principal place of business at 2235 W. Fullerton, Chicago, Cook County, Illinois.  HD is in the business of real estate development and construction of residential and commercial property.

3.      Hartz is a company organized under the laws of Illinois.  Hartz has its principal

place of business at 9026 Heritage Parkway, Woodridge, DuPage County, Illinois.  Hartz is in

the business of residential property development.

**Jurisdiction and Venue**

4.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (all actions

arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) and

(b) (trademarks and unfair competition).  This Court has supplemental jurisdiction of Count III

(deceptive trade practices) under 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Defendant under 735 ILCS § 5/2-

209(a)(1) because Defendant transacts business within Illinois, under 735 ILCS § 5/2-209(b)(3)

because Defendant is organized under the laws of Illinois, and under 735 ILCS § 5/2-209(b)(4)

because Defendant does business within Illinois.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28

U.S.C. § 1400 because this is a civil action founded on federal question jurisdiction, the

Defendant routinely transact business in this jurisdiction, the Defendant has committed acts of

infringement in this jurisdiction, and a substantial part of the events giving rise to the claims

occurred in this judicial district.

**THE HIBERNIAN® MARKS**

7.      In 1998, HD was created by two Chicago home builders with their goal to

develop one-of-a-kind luxury homes with a special focus on quality and customer service.

8.      HD residential and commercial property are found primarily in the Chicago

Metropolitan area.  HD homes are designed to fit its neighborhood aesthetic and make the best

use of the lot, while incorporating energy efficient, high-end amenities.

2

9.     HD enjoys a reputation for excellence in providing its services to customers in the Chicago Metropolitan area.

10.    Since 2004, HD has continuously used the HIBERNIAN® mark in connection with real estate development and construction of residential and commercial property.

11.    HIBERNIAN® is registered upon the Principal Register of the United States Patent and Trademark Office as Registration Number 3,830,523, issued on August 10, 2010 for real estate development and construction of residential and commercial property (the "HIBERNIAN Mark").  A true and correct copy of Registration Number 3,830,523 is attached as Exhibit A.

12.    On September 23, 2016 HD filed its combined section 8 and 15 Declarations with the United States Patent and Trademark Office ("USPTO").

13.    The USPTO acknowledged and accepted the combined declarations.

14.    The HIBERNIAN® Mark  is incontestable under 15 U.S.C. § 1065.

15.    HD's reputation in the industry has grown since it began using HIBERNIAN®, and by reason of HD's continuous use, HIBERNIAN® is now well-known, and is associated with HD as the source of origin design, development and construction services.

16.    Over the years, HD has spent a considerable amount of money in establishing the HIBERNIAN® mark in the minds of customers as a source of one-of-a-kind luxury homes and high quality construction services.

17.    The HIBERNIAN® mark has become associated in the minds of purchasers with HD as a highly reputable provider of construction services.

18.    HD's services have come to enjoy the benefit of an ever increasing goodwill associated with HD through its use of the mark HIBERNIAN®.

19.     In addition, HD owns the service marks, HIBERNIAN, HD HIBERNIAN, and HD HIBERNIAN DEVELOPMENT, which are registered in the State of Illinois, Registration Numbers 100672, 100673, and 100674.  True and correct copies of the Illinois Registrations are attached as Exhibit B.

### MISUSE OF THE HIBERNIAN® MARK BY HARTZ

20.     Hartz has used and currently uses the confusingly similar term "HIBERNIA" in connection with a residential property development in New Lenox, Illinois.

21.     Hartz has distributed advertisements to its customers, displayed on its website, and on its development in New Lenox the term HIBERNIA.  A copy of Hartz's website is attached hereto as Exhibit C.

22.     The use of the term HIBERNIA by Hartz infringes the HIBERNIAN® Mark owned by HD.

23.     HD and Hartz are in direct competition in the construction business and in the surrounding Chicago area.

24.     Individuals seeking services offered by HD and Hartz are likely to be confused and have been confused by the use of HINERNIA in advertisements distributed by Hartz.

25.     On July 18, 2016, HD sent a cease and desist letter to Hartz requesting Hartz to discontinue using the HIBERNIA term in its advertisements and other forms of public communication or take a license from HD to continue its use.

26.     Hartz did not accept the limited license.

27.     Hartz did not cease its use of HIBERNIA.

28.     Plaintiff has no adequate remedy at law, unless enjoined by this Court; Hartz's unfair practices are likely to continue.

29.     As a direct and proximate result of Hartz's actions, HD has been damaged through confusion in the marketplace.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(A)**

30.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 – 29 of the Allegations Common to All Counts as Paragraphs 1 – 29 of Count I.

31.     15 U.S.C. §1125(a)(1)(A) provides as follows:

Any person who...in connection with any...services,...uses in commerce any word, term, name...or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

> (A)     is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15 U.S.C. §1125(a)(1)(A).

32.     The HIBERNIAN® Mark is actively used by HD on or in connection with real estate development and construction of residential and commercial property.

33.     On information and belief, Hartz began using HIBERNIA in connection with residential property development in New Lenox, Illinois.

34.     The use of HIBERNIA by Hartz on or in connection with residential property development in New Lenox, Illinois is likely to cause confusion or mistake to consumers as to the source and origin of their goods.

35.     Consumers who purchase HIBERNIA residential property are likely to believe that there is some connection, affiliation, or association between HD and Hartz.

36. Consumers are likely to believe that by using HIBERNIA, Hartz is doing business with or is affiliated with or sponsored by HD, thereby causing lost sales to HD.

37. The use of HIBERNIA by Hartz in its advertisements and other forms of public communications is likely to cause confusion or mistake or deceive consumers as to the source and origin of their goods by suggesting sponsorship or affiliation with HD.

38. HD has no control over the quality of work and service by Hartz, and the goodwill associated with the HIBERNIAN® Mark is, therefore, diminished.

39. Hartz's infringement on HD's marks has been willful and deliberate, designed specifically to trade upon the enormous goodwill associated with HD's trademarks.

40. The goodwill associated with HD's marks is of enormous value to HD, and HD will suffer irreparable harm should infringement be allowed to continue to the detriment of its reputation and goodwill.

41. Hartz's infringement will continue, unless enjoined by this Court.

42. HD has not authorized Hartz to use HIBERNIA in connection with its goods and/or business activities because Hartz failed to accept HD's limited license and failed to cease using HIBERNIA.

43. HD made repeated demands that Hartz stop using HIBERNIA in its business activities.

44. Despite these demands and notice to Hartz, Hartz has willfully and deliberately refused to stop using HIBERNIA in connection with its services.

45. Because Hartz has used and continues to use HIBERNIA without HD's permission and otherwise violated 15 U.S.C. § 1125(a) without regard to HD's rights, HD is entitled to recover its damages, costs, and Hartz's profits, pursuant to 15 U.S.C. § 1117(a).

46.     Because Hartz willfully and deliberately misused HD's HIBERNIAN® Mark and otherwise violated 15 U.S.C. § 1125(a) without regard to HD's rights, HD is entitled to recover treble damages and its attorney's fees pursuant to 15 U.S.C. § 1117(b).

WHEREFORE, Plaintiff prays for the following relief against Defendant:

a.      That this Court enter a permanent injunction directing Defendant to cease using HIBERNIA in connection with its business activities;

b.      That this Court enter a judgment in favor of Plaintiff and against Defendant, and award damages pursuant to 15 U.S.C. § 1117;

c.      That this Court award Plaintiff enhanced damages under 15 U.S.C. § 1117 for Defendants' willful and deliberate infringement of Plaintiff's trademark;

d.      That this Court award Plaintiff attorney's fees and costs in light of the willful and deliberate infringing acts of Defendant pursuant to 15 U.S.C. § 1117; and

e.      That this Court award Plaintiff such other relief as it deems necessary and just.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1)(A)

47.     Plaintiff repeats and re-alleges Paragraphs 1 – 46 of Count I, inclusive, as Paragraphs 1 – 46 of Count II.

48.     Hartz's use of HIBERNIA in advertisements, on its website, and other forms of public communication constitutes a false designation of origin under Section 43(a) of the Lanham Act that is likely to confuse or has confused customers and prospective customers into believing that Hartz's goods are those of HD, or are connected with, sponsored by or approved by HD, and as a consequence, is likely to divert and has diverted customers away from HD.

49.     HD has no control over the nature and quality of the services sold by Hartz.

50.     Any failure, neglect or default by Hartz in providing high quality goods will reflect adversely on HD as the believed source of origin therefore, hampering efforts by HD to continue to protect its outstanding reputation for high quality and one-of-a-kind goods, and resulting in the loss of the considerable expenditures HD made to develop and sell its goods under the HIBERNIAN® mark, all to the irreparable harm of HD.

51.     Hartz's false designation of origin will continue, unless enjoined by this Court.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

a.      That this Court enter a permanent injunction directing Defendant from using HIBERNIA in connection with its business activities;

b.      That this Court enter a judgment in favor of Plaintiff and against Defendant, and award damages pursuant to 15 U.S.C. § 1117;

c.      That this Court award Plaintiff enhanced damages under 15 U.S.C. § 1117 for Defendants' willful and deliberate infringement of Plaintiff's trademark;

d.      That this Court award Plaintiff attorney's fees and costs in light of the willful and deliberate infringing acts of Defendant pursuant to 15 U.S.C. § 1117; and

e.      That this Court award Plaintiff such other relief as it deems necessary and just.

**COUNT III**
**DECEPTIVE TRADE PRACTICE**
**Violation of Uniform Deceptive Trade Practice Act – 815 ILCS § 510/2 *et seq.***

52.     Plaintiff repeats and re-alleges Paragraphs 1 – 51 of Count I and II, as Paragraphs 1 – 51 of Count III.

53.     The Illinois Uniform Deceptive Trade Practices Act provides as follows:

A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, the person:

(2)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods;

(3)    causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

(5)    represents that goods or services have sponsorship, approval, characteristics...that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; or

(12)    engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

54.    HIBERNIA is actively used by Hartz in the promotion and sale of a residential property development in New Lenox, Illinois.

55.    HD has not authorized Hartz to use HIBERNIA in connection with Hartz's business activities, unless Hartz accepted the limited license, which Hartz declined.

56.    In using HIBERNIA, Hartz has engaged and continues to engage in deceptive trade practice, as defined by Illinois statutory law.

57.    As a result, HD's customers and other individuals in the market for services of the type provided by HD are led to believe that Hartz's services originate from, or are associated with, sponsored by, or approved by, HD.

58.    HD has made demands that Hartz stop using HIBERNIA in its business activities.

59.    Despite these demands, Hartz has willfully, and with reckless disregard for HD's rights, refused to stop using HIBERNIA in connection with its business activities.

60.    Hartz's willful and unlawful acts of unfair competition have caused and are likely

to cause substantial and irreparable harm to HD, and Hartz has been unjustly enriched.

61.     Hartz's deceptive trade practice will continue, unless enjoined by this Court.

62.     Because of the willful and deliberate nature of Hartz's violations, HD is entitled to recover its attorney's fees in the prosecution of this claim pursuant to 815 ILCS § 505/10(a).

WHEREFORE, Plaintiff prays for the following relief against the Defendant:

a.      That this Court enter a permanent injunction directing Defendant to cease using HIBERNIA in connection with its business activities;

b.      That this Court enter a judgment in favor of Plaintiff and against the Defendant for actual damages pursuant to 815 ILCS § 505/10(a)(c);

c.      That this Court award Plaintiff attorney's fees and costs in light of the willful and deliberately deceptive acts of Defendant pursuant to 815 ILCS § 510/3; and

d.      That this Court award Plaintiff such other relief as it deems necessary and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented in this Complaint.

HIBERNIAN DEVELOPMENT, LLC

/s/    Christopher W. Niro
Christopher W. Niro
NIRO LAW GROUP, LLC.
135 S. LaSalle Street, Suite 3025
Chicago, Illinois 60603
Telephone: (312) 767-2086
Fax: (312) 874-7350
chris@nirolaw.com
*Attorneys for Plaintiff*